## Thomas Shearer, Administrator &c. *versus* Roswell Handy and Trustee.

A mother and her son lived together on a farm belonging to her, the son working on the farm and buying and selling the stock, &c. They subsequently referred " all their unsettled accounts " to arbitrators, who awarded, that all the personal property owned between them should be equally divided, that they should pay all the debts, jointly and equally, whether contracted by the one or the other, and that the mother should pay to the son the sum of $ 250. It was *held,* that the provisions of the award in regard to the division of property and the payment of debts were unauthorized by the submission, that they were connected with and entered into the consideration of the residue of the award, and therefore that the whole award was invalid ; but that if it were binding, the creditors of the son could not, unless it was executed on his part, compel the mother to pay the sum of $ 250, under the trustee process, and leave her to her remedy against the son for the amount for which he was liable, as upon an independent matter awarded to be done by him.

*It seems,* that the rule that one summoned under the trustee process is to be charged as trustee if he leaves it doubtful whether he has goods, effects or credits of the principal defendant, is to be applied only to the case where, upon some part of his answers which he fails to explain, he appears *primâ facie* to have such goods, effects or credits in his hands.

The answer of Mary Handy, the alleged trustee, set forth, that her husband died in September, 1831 ; that she owned one third of the farm on which her husband lived, in her own right, and was entitled to dower in the remainder ; that after her husband's death, she took possession of her own estate, including her dower ; that the principal defendant, who was her son, was living on the farm at the time of her husband's death, and continued to live there, with others of her children, until February, 1838 ; that he generally had the charge of the out-door work and the property there situated, and occasionally bought, sold and exchanged the stock on the farm and other out-door property ; that she considered that all the personal property on the farm belonged to her, and that she and Roswell owned no property either jointly or in common ; that her interest in the farm and her services would be considerably more than sufficient for her own support ; but that by the management of Roswell she was involved considerably in debt, she having become surety for him for several of his debts, a portion of which she believed that she had paid ; and that what she did not receive for her support, was principally appropriated by Roswell to his own use.

The answer further set forth, that no contract had been made between her and Roswell in regard to carrying on the farm, and that she had never agreed to pay him any thing for his services ; that while he lived on the farm, he received therefrom more than enough to pay him for his services ; and that she never had any book account against him.

It appeared, that on the 9th of February, 1838, it was agreed between the respondent and Roswell to " refer all their unsettled accounts " to three arbitrators ; that on the 13th of February, 1838, the arbitrators, having examined their several accounts and claims against each other, awarded as follows :

" And, first, we agree, that all the personal property owned between them shall be equally divided between them, except what they each owned previous to 1831. Second, we agree, that the said Mary and Roswell shall pay all the debts, jointly and equally, each one half, whether contracted by the said Mary or Roswell, except such as bear date previous to 1831. And, third, we agree and award, that the said Mary Handy shall pay to the said Roswell two hundred and fifty dollars."

The answer further averred, that if the award was binding, one half of the debts referred to therein, for which she was liable, and which she had paid or expected to pay, Roswell being destitute of property, would much more than exhaust the sum of $250 ; that on the day succeeding the supposed award, some individuals came for the purpose of dividing the personal property ; that before any progress was made in the division, the whole, except eight sheep, two swine and some household property were attached, and afterwards sold for the payment of debts, and that her impression was, that she neither con sented nor objected to the division.

*H. Chapman* and *Aiken*, for the plaintiff, cited, as to the effect of a submission of all unsettled accounts to arbitration, *Bunnel* v. *Pinto*, 2 Connect. R. 432 ; and to the point, that if the arbitrators exceeded their authority in awarding a division of the personal property, this part of the award might be rejected as a mere nullity unless it entered into the consideration of the residue of the award, and its rejection would affect the justice of the case, *Aitchison* v. *Cargey*, 13 Price, 639 ,

1 Dane's Abr. 273 ; *Marks.* v. *Marriot*, 1 Ld. Raym. 116 ; 2 Petersd. Abr. 191, 194 ; *Martin* v. *Williams*, 13 Johns. R. 264 ; *Stanley* v. *Chappel*, 8 Cowen, 235 ; *Perry* v. *Nicholson*, 1 Burr. 278 ; *Ingram* v. *Milnes*, 8 East, 445.

*Wells* and *Davis*, for the defendant, to the point, that the award was invalid, because it did not follow the submission, cited *Towne* v. *Jaquith*, 6 Mass. R. 46 ; Coventry & Hughes's Dig. *Award*, 7 *a* ; *Bean* v. *Farnam*, 6 Pick. 269 ; *Pratt* v. *Hackett*, 6 Johns. R. 14 ; 2 Petersd. Abr. 155 ; Johns. Dig. *Award*, 3 (*b*) ; and that although an award might be void in part and good as to the residue, yet it was incumbent on the party setting up an award which was void in part, to show that such part was independent of the residue, Coventry & Hughes's Dig. *Award*, 10 ; *Peters* v. *Peirce*, 8 Mass. R. 398 ; *Commonwealth* v. *Pejepscut Proprietors*, 7 Mass. R. 399.

PUTNAM J. delivered the opinion of the Court.    The supposed trustee is not liable on the ground, that she owes to the principal defendant any thing for services on the farm.    There was no contract to pay for the services, and if a *quantum meruit* were allowed, he received from the farm more than enough to pay him for working upon it, while his mother lived on the farm after her husband's death, with Roswell, the principal defendant, and other children.

But the plaintiff contends, that the supposed trustee should be charged in consequence of her indebtedness to Roswell, the principal, in virtue of an award of referees, by which they awarded, among other things, that she should pay to Roswell the sum of $ 250.

Now it is very clear, that the referees exceeded their commission.    They had authority to adjudicate upon all unsettled accounts between Roswell and his mother.    This certainly would seem to refer to accounts which then existed.    But the referees undertake to award that Roswell should pay one half of all the debts which she and Roswell, or either of them, owed ; and that he should have for this, one half of the personal property on the farm and $ 250.    Now the mother had never authorized the referees to determine upon what terms she should dispose of her interest in the personal property on the farm to Roswell.

Shearer
*v.*
Handy
and Tr.

*Sept* 28th.

Shearer
v.
Handy
and Tr.

The referees proceeded as if the parties had given them au·thority to hear and determine of and concerning the title, which they and each of them had to the personal property on the farm, and in what manner the same should thereafter be held and disposed of by and between them.   But the authority extended merely to all unsettled accounts.   And, as to the debts, the submission did not authorize the referees to determine how they should be paid.   The law had settled that matter.   But the referees proceeded as if the parties had authorized them to hear and determine what debts they and each of them owed, and what part each was to pay.   Whereas it does not appear, that there was any dispute between them upon that subject.

But it is contended for the plaintiff, that the award may be enforced as to what is good, and rejected as to what is void for want of authority or otherwise.   And if the subjects are not connected or in any way depending upon each other, which are determined by the award, it is true that the part which is unauthorized, may be rejected, and the part which is good may be adopted.   Now, to test this award by this rule, what was the cause or consideration for which the referees awarded, that the mother, the supposed trustee, should pay Roswell $ 250, and half of the personal property on the farm ?   The answer is contained in the award.   It was in consideration that Roswell was to pay one half of all the debts which she and Roswell or either of them owed.   Now how can we know how much they or either of them owed ?   Were the referees authorized to ascertain that fact ?   How could they ascertain the amount without having the authority of their creditors, which it is not pretended they had ?   Again, how much of the personal property on the farm belonged to the mother, and how much to the son?   That was a matter which they never submitted to the referees.   It might be, that Roswell owned the greater part ; though, from the facts which are stated in the answer as to his poverty and want of thrift, it cannot be reasonably supposed that he did.   Yet it might be so, and if his mother took so much of his property as to make her the owner of half, she might be indebted on that account.   And so of the debts ; if Roswell should pay all that he and she jointly or severally owed, she might fall in debt on that account.   But it does not appear what was the

exact amount of the debts. But she answers, that the amount for which she is liable, and expects to pay, would exceed the sum of $ 250. Now it is obvious, that the subjects, on which the referees awarded, were connected together. One thing was evidently set against another. One was in consideration of the other. And so it must follow, that as some were without any authority, and cannot be severed and rejected as not connected with the award of the $ 250, the whole must be rejected.

But if the award was binding, it was evidently to be executed on the part of Roswell as well as on the part of his mother. And, according to the fair meaning and true construction, the things to be done were dependent. Roswell was to pay one half of the debts, before he would be entitled to have one half of the personal property on the farm and the $ 250. But he has not paid the debts, but, on the contrary, is without property. The creditors of Roswell contend, however, that they can legally make the mother pay the $ 250, and that she may have her remedy against her son, for the amount which he was to pay for the debts, as upon an independent matter awarded to be done by him. The result would be most unjust. Roswell is unable, if not unwilling, to pay the debts. The mother is still liable, and if she is charged in this process, then it may be that she will have to pay the money twice over.

It is contended for the plaintiff, that the supposed trustee is to answer so as to discharge herself; that she is to clear up the uncertainties, if any exist. But that rule is to be applied where the trustee is, upon some part of her answer, to be charged unless she can explain it. But such *primâ facie* case is not made out. The plaintiff should, in the first place, prove the indebtedness of the supposed trustee, in virtue of the award. The burden of proof is upon him. But in this there has, as we all think, been a total failure.

On the whole, the Court are all of opinion, that Mary Handy be discharged.